## C. W. SPAWR v. WILLIAM JOHNSON.

BOUNDARIES — *Government Survey, Conclusive.* In a controversy between land-owners as to the title and possession of a strip 13 rods wide and 160 rods long off of the west side of a quarter-section that had been settled upon, preëmpted and patented in accordance with the corners and boundaries of the original governmental survey, the adverse party claiming under a resurvey ordered by the commissioner of the general land office, made more than three years after patent had been issued to the other party, *held,* that the original governmental survey governs as to corners and boundaries; that after the government had issued a patent in accordance therewith, no resurvey can be ordered that changes or alters the corners and boundaries of the survey upon which the patent issues, in the absence of fraud.

*Error from Harper District Court.*

ACTION by *Johnson* against *Spawr*, to recover a strip of land. Judgment for plaintiff. Defendant comes to this court. The opinion states the facts.

*W. M. Glenn*, for plaintiff in error:

When the plaintiff in error purchased this farm, certain lines and corners marked the boundaries to the land he was

buying. These he recognized, and conformed his improvements thereto. Fences were built and roads laid out in conformity with these lines, which were and are the lines established by the government, by its last survey; and the land in dispute herein was a part of this purchase.

It is claimed by the defendant in error, that the purpose of the new survey was not to make new lines and corners, but to reëstablish the old ones. Suppose this were true. Will it be claimed that if only one-fourth of the old section corners could be found by the Tweedale surveyors, that they may not establish the other three-fourths; and if they do or did establish them, and it afterward turns out that the corners so last established do not conform to the original corners, that therefore these last-established corners are not legally-established corners? Spawr testifies that he recognizes the Tweedale survey, for the reason, among others, that he has in his possession a letter, which is in evidence as "Exhibit B," from H. L. Muldron, dated "Department of the Interior, Washington, April 19, 1887."

In this letter from the acting secretary to the general land office, the secretary advises "recognizing the Tweedale survey as the most expedient and practicable method of settling this question," and then says: "You are therefore directed to recognize said surveys as the subsisting surveys of all the townships to which they relate," etc. This was accordingly done. Between plaintiff's and defendant's land the Tweedale survey puts the corners and line 13 rods farther east than the survey of 1871 put it. Will this direction or order of the acting secretary to the commissioner make this Tweedale line the legal and subsisting one? This is the claim of plaintiff in error. It is not so much a question of where this particular line is, as which is the legal and binding survey. We submit that the Tweedale survey must be recognized as the legal one, and where there is a conflict between the survey of 1871 and it, that the Tweedale must stand; and if this be true, then the land in dispute belongs to plaintiff in error, and judgment of the lower court must be reversed.

*Sankey & Campbell,* for defendant in error:

We do not believe that any amount of "recognition" by plaintiff, Spawr, or by any number of citizens, can legalize an illegal survey; or could make that which was not the legally-established boundary lines and corners, the legal and "subsisting" lines and corners. Nor do we admit that any recognition by either the acting secretary of the interior or the commissioner of the general land office did or can legalize the Tweedale surveys in such a manner or to such an extent as to alter or change a single line or corner formerly established by the government.

The only question to be settled is: Could the government, by the Tweedale surveys of 1884, change or alter the legal and subsisting corners? or, in other words, Had the government the power by this Tweedale survey to make new corners where the old ones existed, and at variance with them? The government was not asked by the petitioners to make new lines and corners, but to reëstablish the old ones. The government could not change the established government corners after the title of the land had passed from the government and vested in the preëmptors, the occupants. The government, even though the title had remained and was still in it in 1884, could not, without first declaring the survey of 1871 null and void, affect or change the corners by it established, by another survey. The new could not take the place of the old while the old still existed. The first must be abrogated, declared a nullity, by competent authority, before the second can have any legal force or authority.

The lands in western Harper county were surveyed under the authority of § 2396, Revised Statutes of the United States (2d ed.), 1878, as the then existing law, in 1871. Defendant Johnson settled on the land in dispute in 1880; received his certificate of purchase for same from the United States same year, and his patent a few months later. He testifies that it requires the strip of land 13 rods wide, and now in dispute, to make out the 160 acres which he purchased from the gov-

ernment. Three of the four corners of section 20, and two of section 21, of which the land in dispute forms a part, were distinctly marked by the survey of 1871, and the evidence shows were generally known and recognized by the early settlers, and were pointed out to Tweedale and his surveyors.

We maintain that nothing less than an act of congress would be sufficient to annul and render void these corners.

Opinion by SIMPSON, C.: The material facts are, that in 1880, William Johnson, the defendant in error, settled· upon and preëmpted the southwest quarter of section No. 21, township 32,·range 9 west of the sixth principal meridian, in Harper county. His settlement and preëmption were made in accordance with lines, boundaries and corners as fixed by the original government survey, made in 1871. Spawr, the plaintiff in error, is the owner of the southeast quarter of section No. 20, in the same township and range. The subject-matter of the litigation is a strip of land 13 rods wide, east and west, and 160 rods long, north and south, which Johnson claims as a part of his quarter-section. According to the original government survey, this strip of 13 acres belongs to Johnson ; but it is claimed that in the year 1884, the proper land officers ordered a resurvey of the land in that locality, and this survey is called the Tweedale survey, and by it this strip belongs to Spawr, the plaintiff in error.

The question is, Which of these two surveys shall govern — the original, or the survey made 13 years after by Tweedale? There is substantial agreement as to the facts. At the time of the first settlements all witnesses agree that many of· the section and half-section corners established by the survey of 1871 were plainly visible. It is established that at the time Johnson took his land there was a government corner plainly visible at the southwest corner, one at the northwest and one at the southeast corner of the section in which his land is situate. His final certificate and patent were issued with reference to the lines, boundaries and corners of the survey of 1871. This survey had been approved by proper authority and cer-

tified to the local land office. Under these circumstances, it seems too plain for argument that Johnson is entitled to the land. After the government parted with its title and it had been vested in the settlers, no officer of the land department had the right to order or approve a resurvey that changed the boundaries of the specific parcels of land to which the various settlers had title, in the absence of any claim or showing that fraud had been practiced by them or some one in their interest. Section 2396 of the revised statutes of the United States provides: "The boundary lines actually run and marked in the surveys returned by the surveyor general shall be established as the proper boundary lines of the sections or subdivisions for which they were intended." This section was in force at the time Johnson preëmpted his land and his patent was issued, and gives him a clear legal right to insist on the existing lines and boundaries as established by the original survey.

Another view can be taken, and that is that the location of the corner stones is a question of fact about which there was some conflict in the evidence, and the trial court having decided in favor of Johnson, and there being some evidence to sustain the finding, we will not disturb it. It seems to us from the recitations in the record that the weight of evidence was with Johnson at the trial.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.